UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| John Stotesbery, | |
| *On behalf of himself and those similarly situated*, | Case No. |
| Plaintiff, | Judge |
| v. | |
| Muy Pizza-Tejas, LLC; Ayvaz Pizza, LLC; Shoukat Dhanani; Doe Corporation 1-10; John Doe 1-10 | Jury Demand Endorsed Hereon |
| Defendants. | |

CLASS AND COLLECTIVE ACTION COMPLAINT

1.      John Stotesbery, on behalf of himself and similarly-situated individuals, brings this action against Defendants Muy Pizza-Tejas, LLC; Ayvaz Pizza, LLC; Shoukat Dhanani, Doe Corporation 1-10, and John Doe 1-10 ("Defendants"). Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff and similarly-situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., Minnesota wage and hour laws, and for unjust enrichment.

2.      Defendants operate and/or operated approximately 352 Pizza Hut locations across the United States.

3.      Defendants operate and/or operated multiple Pizza Hut locations in Minnesota (the "Defendants' Pizza Hut stores").

1

4.    Plaintiff seeks to represent the delivery drivers who have worked at the Defendants' Pizza Hut stores.

5.    Defendants repeatedly and willfully violated the Fair Labor Standards Act and Minnesota wage and hour laws by failing to adequately reimburse delivery drivers for their delivery-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wages for all hours worked.

6.    All delivery drivers at the Defendants' Pizza Hut stores, including Plaintiff, have been subject to the same or similar employment policies and practices.

### Jurisdiction and Venue

7.    Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

8.    Venue in this Court is proper under 28 U.S.C. § 1391(b) because Defendants reside in this district, and a substantial part of the events giving rise to the claim herein occurred in this district.

### Parties

**<u>Plaintiff</u>**

**John Stotesbery**

9.    Plaintiff John Stotesbery is a resident of Minnesota.

10.    Plaintiff is an "employee" of all of the Defendants as defined in the FLSA and Minnesota wage and hour laws.

11.    Plaintiff has given written consent to join this action.

**Defendants**

**Muy Pizza-Tejas, LLC**

12.     Defendant Muy Pizza-Tejas, LLC is a foreign limited liability company, authorized to do business under the laws of the state of Minnesota, with its principal place of business at 17890 Blanco Road, Ste 401, San Antonio, TX 78232-1031.

13.     Upon information and belief, Muy Pizza-Tejas, LLC owned and operated Pizza Hut Pizza stores in Minnesota until approximately 2021.

14.     Upon information and belief, Muy Pizza-Tejas, LLC owned approximately 362 Pizza Hut stores in Minnesota and various other states.

15.     Muy Pizza-Tejas, LLC is owned and operated by James Bodenstedt.

16.     Muy Pizza-Tejas, LLC is one of the entities that entered into a franchise agreement with Pizza Hut to operate the Defendants' Pizza Hut stores.

17.     From the beginning of the relevant time period until some time in 2021, Muy Pizza-Tejas, LLC could command where, when, and how much labor was performed by the delivery drivers at the Defendants' Pizza Hut stores.

18.     From the beginning of the relevant time period until some time in 2021, Muy Pizza-Tejas, LLC had substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

19.     From the beginning of the relevant time period until some time in 2021, upon information and belief, Muy Pizza-Tejas, LLC applied or caused to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations,

3

including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

20. From the beginning of the relevant time period until some time in 2021, Muy Pizza-Tejas, LLC had direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

21. From the beginning of the relevant time period until some time in 2021, Muy Pizza-Tejas, LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

22. From the beginning of the relevant time period until some time in 2021, Muy Pizza-Tejas, LLC was an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

23. From the beginning of the relevant time period until some time in 2021, Muy Pizza-Tejas, LLC had been an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

24. Muy Pizza-Tejas, LLC's gross revenue exceeded $500,000 per year.

**Ayvaz Pizza, LLC**

25. Defendant Ayvaz Pizza, LLC is a foreign limited liability company, authorized to do business under the laws of the state of Minnesota, with its principal place of business at 4415 Highway 6, Sugarland, TX 77478.

26. Upon information and belief, Ayvaz Pizza, LLC owns and operates Pizza Hut Pizza stores in Minnesota.

27.    Ayvaz Pizza, LLC is owned and operated by Shoukat Dhanani.

28.    Ayvaz Pizza, LLC is one of the entities that has entered into a franchise agreement with Pizza Hut to operate the Defendants' Pizza Hut stores.

29.    Ayvaz Pizza, LLC is the entity that appears on Plaintiff's paystubs for work he completes for Defendants.

30.    Ayvaz Pizza, LLC may command where, when, and how much labor is performed by the delivery drivers at the Defendants' Pizza Hut stores.

31.    Ayvaz Pizza, LLC has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

32.    Upon information and belief, Ayvaz Pizza, LLC applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

33.    Ayvaz Pizza, LLC has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

34.    At all relevant times, Ayvaz Pizza, LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

35.    Ayvaz Pizza, LLC is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

36.     At all relevant times, Ayvaz Pizza, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

37.     Ayvaz Pizza, LLC's gross revenue exceeds $500,000 per year.

38.     Upon information and belief, in or around 2021, Ayvaz Pizza, LLC, entered into a transaction to purchase or otherwise take ownership of Defendants' Pizza Hut stores, which had been previously owned and operated by Muy Pizza-Tejas, LLC and James Bordenstedt (collectively "the Predecessors").

39.     Upon information and belief, Ayvaz Pizza, LLC is liable as a successor in interest for damages suffered by Plaintiff and the delivery drivers at Defendants' Pizza Hut stores during all relevant times while Defendants' Pizza Hut stores were owned and operated by the Predecessors because:

    a)   Upon information and belief, that there is an express or implied agreement by Ayvaz Pizza, LLC to assume the Predecessors' liability;

    b)   Upon information and belief, the transfer of Defendants' Pizza Hut Stores from the Predecessors to Ayvaz Pizza, LLC was a de facto merger;

    c)   Upon information and belief, Ayvaz Pizza, LLC has the ability to provide relief for the claims alleged;

    d)   Upon information and belief, there has been a substantial continuity of business operations between Ayvaz Pizza, LLC and the Predecessors' business;

    e)   Upon information and belief, Ayvaz Pizza, LLC uses the same facilities as the Predecessors;

f)   Upon information and belief, Ayvaz Pizza, LLC uses the same or substantially the same workforce as the Predecessors;

g)   Upon information and belief, Ayvaz Pizza, LLC uses the same or substantially the same supervisory personnel as the Predecessors;

h)   Upon information and belief, that the same jobs existed under substantially the same working conditions at Defendants' Pizza Hut Stores when they were owned by the Predecessors;

i)   Upon information and belief, Ayvaz Pizza, LLC uses the same machinery, equipment and methods of production as the Predecessors; and

j)   Upon information and belief, Ayvaz Pizza, LLC produces the same product as the Predecessors.

**Shoukat Dhanani**

40.   Shoukat Dhanani is a founder and CEO of Ayvaz Pizza, LLC.

41.   Shoukat Dhanani is a person who has entered into a franchise agreement with Pizza Hut to operate the Defendants' Pizza Hut stores.

42.   Shoukat Dhanani is the founder and CEO of Ayvaz Pizza, LLC.

43.   Shoukat Dhanani may command where, when, and how much labor is performed by the delivery drivers at the Defendants' Pizza Hut stores.

44.   Shoukat Dhanani is individually liable to the Defendants' Pizza Hut stores' delivery drivers under the definitions of "employer" set forth in the FLSA and Minnesota law because he owns and operates the Defendants' Pizza Hut stores, serves as a manager of Ayvaz Pizza, LLC, ultimately controls significant aspects of the Defendants' Pizza Hut stores' day-to-day functions,

and ultimately has control over compensation and reimbursement of employees.  29 U.S.C. § 203(d).

45.     At all relevant times, by virtue of his role as founder and CEO of Ayvaz Pizza, LLC, Shoukat Dhanani has had financial control over the operations at each of the Defendants' Pizza Hut stores.

46.     At all relevant times, by virtue of his role as founder and CEO of Ayvaz Pizza, LLC, Shoukat Dhanani has a role in significant aspects of the Defendants' Pizza Hut stores' day to day operations.

47.     At all relevant times, by virtue of his role as founder and CEO of Ayvaz Pizza, LLC, Shoukat Dhanani has had control over the Defendants' Pizza Hut stores' pay policies.

48.     At all relevant times, by virtue of his role as founder and CEO of Ayvaz Pizza, LLC, Shoukat Dhanani has had power over personnel and payroll decisions at the Defendants' Pizza Hut stores, including but not limited to influence of delivery driver pay.

49.     At all relevant times, by virtue of his role as founder and CEO of Ayvaz Pizza, LLC, Shoukat Dhanani has had the power to hire, fire and discipline employees, including delivery drivers at Defendants' Pizza Hut stores.

50.     At all relevant times, by virtue of his role as founder and CEO of Ayvaz Pizza, LLC, Shoukat Dhanani has had the power to stop any illegal pay practices that harmed delivery drivers at the Defendants' Pizza Hut stores.

51.     At all relevant times, by virtue of his role as founder and CEO of Ayvaz Pizza, LLC, Shoukat Dhanani has had the power to transfer the assets and liabilities of the Defendants' Pizza Hut stores.

52.     At all relevant times, by virtue of his role as founder and CEO of Ayvaz Pizza, LLC, Shoukat Dhanani has had the power to declare bankruptcy on behalf of the Defendants' Pizza Hut stores.

53.     At all relevant times, by virtue of his role as founder and CEO of Ayvaz Pizza, LLC, Shoukat Dhanani as had the power to enter into contracts on behalf of each of the Defendants' Pizza Hut stores.

54.     At all relevant times, by virtue of his role as founder and CEO of Ayvaz Pizza, LLC, Shoukat Dhanani has had the power to close, shut down, and/or sell each of the Defendants' Pizza Hut stores.

55.     At all relevant times, by virtue of his role as founder and CEO of Ayvaz Pizza, LLC, Shoukat Dhanani had authority over the overall direction of each of Defendants' Pizza Hut stores and was ultimately responsible for their operations.

56.     The Defendants' Pizza Hut stores function for Shoukat Dhanani's profit.

57.     Shoukat Dhanani has influence over how the Defendants' Pizza Hut stores can run more profitably and efficiently.

58.     Upon information and belief Shoukat Dhanani, entered into a transaction to purchase or otherwise take ownership of Defendants' Pizza Hut stores, which had been previously owned and operated by Muy Pizza-Tejas, LLC and James Bordenstedt (collectively "the Predecessors").

59.     Upon information and belief, Shoukat Dhanani is liable as a successor in interest for damages suffered by Plaintiff and the delivery drivers at Defendant's' Pizza Hut stores during all

relevant times while Defendants' Pizza Hut stores were owned and operated by the Predecessors because:

    k) Upon information and belief, that there is an express or implied agreement by Shoukat Dhanani to assume the Predecessors' liability;

    l) Upon information and belief, the transfer of Defendants' Pizza Hut Stores from the Predecessors to Shoukat Dhanani was a de facto merger;

    m) Upon information and belief, Shoukat Dhanani has the ability to provide relief for the claims alleged;

    n) Upon information and belief, there has been a substantial continuity of business operations between Shoukat Dhanani and the Predecessors' business;

    o) Upon information and belief, Shoukat Dhanani uses the same facilities as the Predecessors;

    p) Upon information and belief, Shoukat Dhanani uses the same or substantially the same workforce as the Predecessors;

    q) Upon information and belief, Shoukat Dhanani uses the same or substantially the same supervisory personnel as the Predecessors;

    r) Upon information and belief, that the same jobs existed under substantially the same working conditions at Defendants' Pizza Hut Stores when they were owned by the Predecessors;

    s) Upon information and belief, Shoukat Dhanani uses the same machinery, equipment and methods of production as the Predecessors; and

     t)   Upon information and belief, Shoukat Dhanani produces the same product as the Predecessors.

**Doe Corporation 1-10**

60.    Upon information and belief, Defendants own, operate, and control other entities and/or limited liability companies that also comprise part of the Defendants' Pizza Hut stores, and qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Pizza Hut stores as that term is defined by the FLSA and Minnesota wage and hour laws.

61.    Upon information and belief, Shoukat Dhanani owns and/or operates, in whole or in part, a number of these entities that make up part of the Defendants' operation.

62.    Upon information and belief, the franchisor, Pizza Hut, may also be liable as an employer of the delivery drivers employed at Defendants' Pizza Hut stores.

63.    The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**John Doe 1-10**

64.    Upon information and belief, there are additional individuals who also qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Pizza Hut stores as that term is defined by the FLSA and Minnesota wage and hour laws.

65.    Upon information and belief, James Bordenstedt is an individual who could qualify as Plaintiff's and the putative class and collective's employer as that term is defined under the FLSA and Minnesota law.

66.    Upon information and belief, Shoukat Dhanani has entered into co-owner relationships with a number of his managers and business partners, and those individuals might

11

also qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Pizza Hut stores as that term is defined by the FLSA and Minnesota wage and hour laws.

67.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

## FACTS

### Class-wide Factual Allegations

68.     During all relevant times, Defendants have operated the Defendants' Pizza Hut stores.

69.     Plaintiff and the similarly situated persons Plaintiff seeks to represent are current and former delivery drivers at the Defendants' Pizza Hut stores.

70.     All delivery drivers employed at the Defendants' Pizza Hut stores over the last three years have had essentially the same job duties.

71.     The delivery drivers at the Defendants' Pizza Hut stores worked dual jobs, one where they completed deliveries and received tips, and another when they helped inside the store and did not receive tips.

72.     When there are no deliveries to make, Defendants' delivery drivers are required to work inside the Defendants' Pizza Hut stores folding boxes, doing dishes, stocking coolers, mopping and sweeping the floor, taking the trash out, preparing food, and completing other duties inside the restaurant as necessary.

73.     Plaintiff and similarly situated delivery drivers have been paid minimum wage, slightly above minimum wage, or minimum wage minus a tip credit for the hours they worked delivering for Defendants' Pizza Hut stores.

12

74.     Defendants require delivery drivers at Defendants' Pizza Hut stores to provide cars to use while completing deliveries for Defendants.

75.     Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

76.     Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing charges, licensing and registration costs, cell phone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

77.     Pursuant to such requirements, Plaintiff and other similarly situated employees purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, financing, licensing, and registration charges, and incur cell phone and data charges all for the primary benefit of Defendants.

78.     Plaintiff and similarly situated delivery drivers received a per-delivery reimbursement payment that was less than the IRS standard business mileage rate.

79.     As of May 2022, Plaintiff and similarly situated delivery drivers receive a per-mile reimbursement rate that is less than the IRS standard business mileage rate.

80.     Defendants' reimbursement payments are not based on the actual expenses incurred by the delivery drivers.

81.     The Defendants' Pizza Hut stores do not track or record the delivery drivers' actual expenses.

82.     The Defendants' Pizza Hut stores do not collect receipts from their delivery drivers related to the automobile expenses they incur.

83.     The Defendants' Pizza Hut stores do not collect receipts of delivery drivers' gasoline purchases during weeks when the delivery drivers worked for Defendants.

84.     The Defendants' Pizza Hut stores do not collect receipts of delivery drivers' automobile maintenance, repair, and parts purchased or paid for during weeks when the delivery drivers worked for Defendants.

85.     The Defendants' Pizza Hut stores do not collect receipts of delivery drivers' monthly or annual automobile insurance costs.

86.     The Defendants' Pizza Hut stores do not collect receipts of delivery drivers' automobile registration costs.

87.     The Defendants' Pizza Hut stores do not collect receipts of delivery drivers' automobile financing or purchase costs.

88.     The Defendants' Pizza Hut stores do not collect any other receipts from delivery drivers related to the automobile expenses they incur as delivery drivers at the Defendants' Pizza Hut stores.

89.     The Defendants' Pizza Hut stores do not reimburse their delivery drivers for the actual expenses delivery drivers incur.

90.     The Defendants' Pizza Hut stores do not reimburse their delivery drivers at the IRS standard business mileage rate.

91.     The Defendants' Pizza Hut stores do not reasonably approximate the delivery drivers' expenses.

14

92.     The Defendants' Pizza Hut stores' reimbursement payments result in reimbursements that are less than the IRS standard business mileage rate for each mile driven.

93.     According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

   a.     2018: 54.5 cents/mile
   b.     2019: 58 cents/mile
   c.     2020: 57.5 cents/mile
   d.     2021: 56 cents/mile
   e.     2022: 58.5 cents/mile

94.     The delivery drivers at the Defendants' Pizza Hut stores have incurred even more in expenses than those contemplated by the IRS standard business mileage rate—*e.g.*, cell phone and data charges.

95.     The delivery drivers at the Defendants' Pizza Hut stores advance a business expense, interest free, to Defendants when they provide cars to use at work.

96.     Defendants reimburse their delivery drivers amounts less than they would have had to be pay if they had rented vehicles each day to use to make deliveries.

97.     Defendants reimburse their delivery drivers amounts less than they would have had to pay to own and maintain a fleet of vehicles to complete their deliveries.

98.     Defendants benefit from the delivery drivers at the Defendants' Pizza Hut stores spending time off the clock repairing and maintaining their vehicles.

99.     Defendants benefit from delivery drivers at the Defendants' Pizza Hut stores taking on the risk of using their vehicles to drive for Defendants' business.

100.    Defendants save substantial insurance costs and exposure to liability by requiring their judgment proof minimum wage workers to take on the risk of accident or injury for them.

101.    As a result of the automobile and other job-related expenses incurred by Plaintiff and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA and Minnesota law.

102.    Defendants have applied the same or similar pay policies, practices, and procedures to all delivery drivers at the Defendants' Pizza Hut stores.

103.    Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

104.    Defendants have willfully failed to pay federal and Minnesota state minimum wage to Plaintiff and similarly situated delivery drivers at the Defendants' Pizza Hut stores, and have been unjustly enriched by the delivery drivers' incurring automobile expenses for their benefit.

### Plaintiff's Individual Factual Allegations

105.    Plaintiff has worked at the Pizza Hut store in Bloomington, Minnesota owned and operated by Defendants since approximately 2011.

106.    Plaintiff works dual jobs: one job where Plaintiff is on the road making deliveries and receiving tips, and another job when Plaintiff helps with tasks inside the store and does not receive tips.

107.    Plaintiff is paid minimum wage or slightly above minimum wage for all hours worked.

108.    When Plaintiff is not delivering food, he works inside the restaurant. His work inside the restaurant includes doing dishes, cleaning, folding boxes, stocking the cooler, answering

phones, preparing food, taking the trash out and completing other duties inside the restaurant as necessary.

109.    Plaintiff is required to use his own car to deliver pizzas.

110.    Until approximately March 2022, Plaintiff was reimbursed $1.25 per delivery.

111.    Between approximately March 2022 and May 2022, Plaintiff was reimbursed $1.55 per delivery.

112.    Since May 2022, Plaintiff is reimbursed approximately $.31 per mile.

113.    Before approximately August 2020 Plaintiff regularly drove at least 3.5 miles round trip per delivery.

114.    Since approximately August 2020 Plaintiff regularly drives at least 6.5 miles per round trip delivery.

115.    Plaintiff is required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

116.    Plaintiff is required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone service, GPS service, automobile financing, licensing and registration costs, and other equipment necessary for delivery drivers to complete their job duties.

117.    Plaintiff has purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, automobile financing, licensing and registration costs, and incurred cell phone and data charges all for the primary benefit of Defendants.

118.    Defendants do not track the actual expenses incurred by Plaintiff.

17

119.    Defendants do not ask Plaintiff to provide receipts of the expenses he incurs while delivering pizzas for Defendants.

120.    Defendants do not reimburse Plaintiff based on his actual delivery-related expenses.

121.    Plaintiff is not reimbursed at the IRS standard mileage rate for the miles he drives while completing deliveries.

122.    Defendants do not reimburse Plaintiff based on a reasonable approximation of his expenses.

123.    Plaintiff regularly makes approximately 2.5 deliveries per hour during the hours he works as a delivery driver.

124.    Plaintiff regularly drives 6.5 miles per round trip delivery.

125.    In 2021, for example, the IRS business mileage reimbursement was $.56 per mile. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. Based on Plaintiff's estimate of 6.5 miles per delivery, Defendants reimbursed Plaintiff $.192 per mile ($1.25 per delivery / 6.5 miles per delivery). As a result, Plaintiff estimates that Defendants under-reimbursed him by $.368 per mile ($.56-$.192=$.368), $2.39 per delivery ($.368 × 6.5 miles per delivery), and $5.98 per hour ($2.39 × 2.5 deliveries per hour).

126.    Defendants failed to pay Plaintiff minimum wage as required by law.

## Collective Action Allegations

127.    Plaintiff brings the First Count on behalf of himself and

All similarly situated current and former delivery drivers employed at the Defendants' Pizza Hut stores owned, operated, and controlled by Defendants nationwide, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

18

128.    At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked and failing to reimburse delivery drivers for automobile expenses and other job-related expenses. Plaintiff's claims are essentially the same as those of the FLSA Collective.

129.    Defendants' unlawful conduct is pursuant to a company policy or practice.

130.    Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked and to fully reimburse for "tools of the trade."

131.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

132.    The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

133.    The FLSA Collective members are readily identifiable and ascertainable.

134.    In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

### Class Action Allegations

135.    Plaintiff brings the Second, Third, and Fourth Counts under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at the Defendants' Pizza Hut stores in the State of Minnesota between the date two years prior to the filing of the original complaint and the date of final judgment in this matter ("Minnesota Wage Class").

136.    Plaintiff brings the Fifth Count under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at the Defendants' Pizza Hut stores in the State of Minnesota between the date six years prior to the filing of the original complaint and the date of final judgment in this matter ("Minnesota Unjust Enrichment Class") (Combined with Minnesota Wage Class "Rule 23 Classes")

137.    Excluded from the Rule 23 Classes are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Classes.

138.    The number and identity of the Minnesota Wage Class members are ascertainable from Defendants' records.

139.    The number and identity of the Minnesota Unjust Enrichment Class members are ascertainable from Defendants' records.

140.    The hours assigned and worked, the positions held, deliveries completed, and the rates of pay and reimbursements paid for each member of the Rule 23 Classes are determinable from Defendants' records.

141.    All of the records relevant to the claims of members of the Rule 23 Classes should be found in Defendants' records.

142.    For the purpose of notice and other purposes related to this action, their names and contact information are readily available from Defendants.

143.    Notice can be provided by means permissible under Rule 23.

144.    The members of the Rule 23 Classes are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

145.    There are more than 50 Minnesota Wage Class members.

146.    There are more than 50 Minnesota Unjust Enrichment Class members.

147.    Plaintiff's claims are typical of those claims which could be alleged by any member of the Rule 23 Classes, and the relief sought is typical of the relief which would be sought by each member of the Rule 23 Classes in separate actions.

148.    Plaintiff and the members of the Rule 23 Classes were subject to the same practices of Defendants, as alleged herein, of failing to pay minimum wage, untimely payment of wages, and being unjustly enriched by their automobile policy.

149.    Plaintiff and the Minnesota Wage Class members have all sustained similar types of damages as a result of Defendants' failure to comply with Minnesota wage law.

150.    Plaintiff and the Minnesota Unjust Enrichment Class members have all unjustly enriched Defendants in the same way.

151.    Plaintiff and the members of the Rule 23 Classes sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

152.    Plaintiff is able to fairly and adequately protect the interests of the Minnesota Wage Class and has no interests antagonistic to the Minnesota Wage Class.

153.    Plaintiff is able to fairly and adequately protect the interests of the Minnesota Unjust Enrichment Class and has no interests antagonistic to the Minnesota Unjust Enrichment Class.

154.   Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

155.   A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

156.   This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

157.   The Minnesota Wage Class and the Minnesota Unjust Enrichment Class are proper treated as subclasses pursuant to Rule 23(c)(5).

158.   Common questions of law and fact exist as to the Minnesota Wage Class that predominate over any questions only affecting Plaintiff and the Minnesota Wage Class members individually and include, but are not limited to:

   a.   Whether Plaintiff and the Minnesota Wage Class were subject to a policy that required them to maintain and pay for safe, operable, and legally compliant automobiles to use in completing deliveries;

   b.   Whether Plaintiff and the Minnesota Wage Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

   c.   Whether Defendants reimbursed Plaintiff and the Minnesota Wage Class members for their actual expenses;

d. Whether Defendants reimbursed Plaintiff and the Minnesota Wage Class members at the IRS standard business mileage rate for the miles they drove in making deliveries;

e. Whether Defendants properly reimbursed Plaintiff and the Minnesota Wage Class members;

f. Whether Plaintiff and the Minnesota Wage Class members were subject to a common expense reimbursement policy that resulted in wages to drop below legally allowable minimum wage;

g. Whether Plaintiff and the Minnesota Wage Class were actually paid the wage rate they were promised by Defendants;

h. The nature and extent of class-wide injury and the measure of damages for those injuries

159. Common questions of law and fact exist as to the Minnesota Unjust Enrichment Class that predominate over any questions only affecting Plaintiff and the Minnesota Unjust Enrichment Class members individually and include, but are not limited to:

a. Whether Plaintiff and the Minnesota Unjust Enrichment Class members were subject to a common policy that required them to provide cars to complete deliveries for Defendants;

b. Whether Plaintiff and the Minnesota Unjust Enrichment Class members were subject to a common automobile expense reimbursement policy;

c. Whether Plaintiff and the Minnesota Unjust Enrichment Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

d. Whether Plaintiff and the Minnesota Unjust Enrichment Class conferred a measurable benefit on Defendants;

e. Whether Defendants avoided business expenses they would have otherwise been required to cover but for Plaintiff and the Minnesota Unjust Enrichment Class providing cars to use to make deliveries;

    f.   How much it would have cost Defendants to operate their business but for Plaintiff and the Minnesota Unjust Enrichment Class providing cars to use to make deliveries;

    g.   Whether Defendants were aware of the benefit that was being conferred on them by Plaintiff and the Minnesota Unjust Enrichment Class;

    h.   The nature and extent of class-wide injury and the measure of damages for those injuries.

160.    In recognition of the services Plaintiff has rendered and will continue to render to the Rule 23 Classes, Plaintiff will request payment of a service award upon resolution of this action.

## Causes of Action

### Count 1
### Failure to Pay Minimum Wages - Fair Labor Standards Act
### (On Behalf of Plaintiff and the FLSA Collective)

161.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

162.    Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

163.    Defendants paid Plaintiff and the FLSA Collective at or close to minimum wage for all hours worked.

164.    Defendants required and continue to require Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, and failed to properly reimburse Plaintiff and the FLSA Collective for said expenses.

165.    By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

166.     Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

167.     As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**Count 2**
**Failure to Pay Minimum Wages – Minn. Stat. 177.21 *et seq.***
**(On Behalf of Plaintiff and the Minnesota Wage Class)**

168.     Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

169.     Defendants are a "large employer" as that term is defined in the Minnesota Fair Labor Standards Act.

170.     Defendants paid Plaintiff and the Minnesota Wage Class below state minimum wage for the hours they worked by requiring them to cover automobile expenses and other job-related expenses.

171.     Defendants ostensibly paid Plaintiff and the Minnesota Wage Class at or close to minimum wage for the hours they worked.

172.     Because Defendants required Plaintiff and the Minnesota Wage Class to pay for automobile expenses and other job-related expenses out of pocket, Defendants failed pay Plaintiff and the Minnesota Wage Class minimum wage.

173.     By not paying Plaintiff and the Minnesota Wage Class at least minimum wage for each hour worked, Defendants have violated Minn. Stat. § 177.21 et seq.

174.    As a result of Defendants' violations, Plaintiff and the Minnesota Wage Class are entitled to unpaid minimum wages, unreimbursed expenses, liquidated damages, attorneys' fees and costs.

**Count 3**
**Unlawful Deduction From Wages – Minn. Stat. § 177.21, *et seq.***
**(On Behalf of Plaintiff and the Minnesota Wage Class)**

175.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

176.    Defendants did not fully reimburse Plaintiff and the Minnesota Wage Class for the expenses they incurred in operating their motor vehicles for Defendants' business purposes.

177.    As a result of Defendants' failure to reimburse delivery drivers for the expenses they incurred in operating their motor vehicles for Defendants' business purposes, Plaintiff and the Minnesota Wage Class were each subject to a deduction for equipment used in employment that exceeded $50 in violation of Minn. Stat. § 177.24, Subd. 4.

178.    As a result of requiring Plaintiff and the Minnesota Wage Class to pay in excess of $50 toward vehicle expenses that benefited the company, Defendants made an unlawful direct or indirect deductions that resulted in their wages falling below the minimum wage.

179.    Alternatively, if Plaintiff and the Minnesota Wage Class's vehicle expenses are considered "travel expenses," Defendants have improperly deducted said expenses from Plaintiff and the Minnesota Wage Class's wages in violation of Minn. Stat. § 177.24, Subd. 4.

180.    As a result of Defendants' violations, Plaintiff and the Minnesota Wage Class are entitled to unpaid minimum wages, unreimbursed expenses, liquidated damages, attorneys' fees and costs.

**Count 4**
**Untimely Payment of Wages – Minn. Stat. § 181.101 *et seq.***
**(On Behalf of Plaintiff and the Minnesota Wage Class)**

181.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

182.    During all relevant times, Defendants were covered by Minn. Stat. § 181.101, were within the meaning of "employer" as defined by Minn. Stat. § 181.171 and were not exempt from its protections.

183.    Minn. Stat. § 181.101(1) requires that Defendants pay Plaintiff and the Minnesota Wage Class all wages earned by the employee at least once every 31 days and on a regular payday designated in advance.

184.    By failing to pay Plaintiff and the Minnesota Wage Class all wages due to them under the FLSA and Minnesota wage and hour law, Defendants have also violated Minn. Stat. § 181.101.

185.    Plaintiff and the Minnesota Wage Class's unpaid wages and unreimbursed expenses have remained unpaid for more than thirty-one (31) days beyond their regularly scheduled payday.

186.    As a result of Defendants' violations, Plaintiff and the Minnesota Wage Class are entitled to unpaid wages, attorney's fees, and costs.

27

**Count 5**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Minnesota Unjust Enrichment Class)**

187.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

188.    The Minnesota Unjust Enrichment Class has conferred a benefit on Defendants by using their own cars to work for Defendants.

189.    Defendants are aware of and have accepted the benefit conferred on them by the Minnesota Unjust Enrichment Class.

190.    It would be unjust for Defendants to be permitted to retain the benefit conferred on them by Plaintiff and the Minnesota Unjust Enrichment Class without commensurate compensation.

191.    Plaintiff and the Minnesota Unjust Enrichment Class are entitled to equitable restitution of all unreimbursed expenses, unauthorized deductions, and unpaid wages.

**WHEREFORE**, Plaintiff John Stotesbery prays for all of the following relief:

A.    Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and their counsel to represent the collective action members.

B.    Unpaid minimum wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C.    Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

D.      Designation of Plaintiff as representative of the Minnesota Wage Class and the Minnesota Unjust Enrichment Class and counsel of record as Class Counsel of both Rule 23 Classes.

E.      A declaratory judgment that the practices complained of herein are unlawful under Minn. Stat. § 177.21 *et seq.* and Minn. Stat. § 181.101 *et seq.*

F.      An award of unpaid minimum wages and unreimbursed expenses due under Minn. Stat. § 177.21 *et seq.* and Minn. Stat. § 181.101 *et seq.*

G.      An award of restitution as a result of unjust enrichment to the Minnesota Unjust Enrichment Class.

H.      An award of prejudgment and post-judgment interest.

I.      An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

J.      Such other legal and equitable relief as the Court deems appropriate.

**PLAINTIFF DEMANDS A JURY AS TO ALL TRIABLE ISSUES**


Dated: June 21, 2022                    Respectfully submitted,

                                        s/ Corey W. Kobbervig
                                        Corey W. Kobbervig (#0395472)
                                        KOBBERVIG LAW LLC
                                        1624 Harmon Pl Ste 300G
                                        Minneapolis, MN 55403
                                        Telephone: (651) 357-0111
                                        *corey@kobberviglaw.com*

                                        www.KobbervigLaw.com

                                        s/ Samuel D. Elswick, Jr.
                                        Andrew R. Biller (*pro hac vice forthcoming*)

29

Andrew P. Kimble *(pro hac vice forthcoming)*
Samuel D. Elswick *(pro hac vice forthcoming)*
BILLER & KIMBLE, LLC
8044 Montgomery Rd., Ste. 515
Cincinnati, OH 45209
Telephone: (513) 452-3568
Facsimile: (614) 340-4620
*abiller@billerkimble.com*
*akimble@billerkimble.com*
*selswick@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiff and the putative class*