# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| John Stotesbery,<br><br>*On behalf of himself and those similarly situated*<br><br>        Plaintiff,<br><br>v.<br><br>Muy Pizza-Tejas, LLC; Ayvaz Pizza, LLC; Shoukat Dhanani; Doe Corporation 1-10; John Doe 1-10,<br><br>        Defendants | No. 22-cv-01622 (KMM/TNL)<br><br><br><br>**ORDER** |

Before the Court is Plaintiff John Stotesbery's ("Plaintiff") Second Motion to File a Third Amended Complaint (ECF 249). For the reasons that follow, the motion is denied.

**I.      Background**

This is a Fair Labor Standards Act ("FLSA") case involving allegations of wage and hour violations. Plaintiff is a Pizza Hut delivery driver, who brought his original Complaint (ECF 1) on his own behalf and on behalf of a putative nationwide collective of other Pizza Hut Drivers, against Defendant Muy Pizza Tejas, LLC and MUY Pizza Minnesota, LLC (together, the "Muy Defendants"), Defendant Ayvaz Pizza, LLC and Shoukat Dhanani (together, the "Ayvaz Defendants") (collectively, all Defendants are "Defendants"). Plaintiff alleged that Defendants require him and his fellow delivery drivers to use personal vehicles to make deliveries and fail to adequately reimburse their resulting expenses, in

1

violation of federal and common law. *See id.* at 1. Following motions to dismiss brought by the Defendants, this Court determined that it lacked personal jurisdiction over those FLSA claims that lacked a connection with Minnesota. *See* ECF 58. The Court permitted the case to go forward as to Minnesota drivers. *Id*.

After its ruling, the Court granted a joint motion to stay proceedings while the parties pursued settlement negotiations. ECF 144. This stay ultimately led to a settlement with the Muy Defendants as to the Minnesota drivers. *See, e.g.*, ECF 220 (Parties' notice of settlement). But before this settlement with the Muy Defendants was reached, Plaintiff also filed a motion for reconsideration, asking the Court to reassess its personal jurisdiction holding in light of an intervening United States Supreme Court decision, *Mallory v. Norfolk Southern Railway Co.*, 600 U.S. 122 (2023). ECF 157. The Court ultimately denied Plaintiff's request to seek reconsideration, concluding that *Mallory* did not constitute a change of law that warranted a different result. *See generally* ECF 247. In short, it was the Court's conclusion that *Mallory* stood for a different legal principle—that a defendant may *consent* to general personal jurisdiction in a state for all claims against it, arising anywhere—than what had been at issue in the motion to dismiss in this case—whether FLSA confers nationwide jurisdiction over claims that lack connection to the litigation forum. *Id*. at 4–5.

Meanwhile, while the Court's ruling on the motion for reconsideration was pending, the law firm representing Mr. Stotesbery in this matter filed a new case against the Muy Defendants in the Northern District of Georgia, on behalf of a similar nationwide collective of delivery drivers. *See generally Brown v. MUY Pizza-Tejas, LLC, MUY Pizza Southeast,*

*LLC, et al*, 1:23-cv-01816-MLB (N.D. Ga.). In that case, when faced with a similar motion to dismiss, the plaintiff argued that, by registering to do business with Georgia's Secretary of State, the Muy Defendants had consented to general personal jurisdiction in Georgia for all claims against them, arising anywhere. *See id*. (ECF 57 at 3). The Georgia court agreed and allowed plaintiff to proceed in certifying a nationwide collective of delivery drivers. *Id*. (ECF 71 at 15). While the Georgia case proceeded apace (and after this Court's denial of leave to file a motion for reconsideration), Plaintiff in this matter filed the pending motion seeking leave to file a Third Amended Complaint.

Most of the amendments sought[1] in the pending motion are directed toward reestablishing nationwide claims in this case. This is accomplished through new allegations that the defendant business entities in this case, by registering to do business in Minnesota, consented to general personal jurisdiction in Minnesota for claims against them arising anywhere. *See* ECF 251-1 (Proposed Third Amend. Compl.) ¶¶ 41–42 (proposing new allegations that "MUY Pizza-Tejas, LLC has registered to do business and registered an

---

[1] The Court observes that at least some proposed amendments do not appear related to the reintroduction of nationwide claims. *See, e.g.*, ¶ 182 (seeking to replace the allegation that "[t]he Defendants' Pizza Hut stores do not reimburse their delivery drivers for the actual expenses delivery drivers incur" with the allegation that "[t]he Defendants' Pizza Hut stores do not reimburse their delivery drivers for the purchase price of their vehicle"); *id*. at 73–74 (seeking to introduce a new count of successor liability against the Ayvaz Defendants). These seemingly unrelated amendments are not addressed by the parties in the briefing over the pending motion. And as discussed below, the Court's reasons for denying the pending motion are based on its conclusion that it is inappropriate to reintroduce nationwide claims into this case. To the extent that Plaintiff still wishes to seek amendments to the complaint that are unrelated to nationwide jurisdiction, it may either meet and confer with opposing counsel and file a stipulation that such amendments are unopposed, or it may request leave to file supplemental briefing addressing only such amendments, and the Court will enter a briefing order.

authorized agent for service of process in the state of Minnesota pursuant to Minnesota state law" and that "MUY Pizza-Tejas, LLC has consented to the Court's general personal jurisdiction"); *id.* ¶¶ 56–67, 109–110 (same allegations for Muy Pizza Minnesota, LLC and Ayvaz Pizza, LLC, respectively). Other amendments are follow-on allegations that anticipate the reintroduction of a nationwide collective. *See, e.g.*, *id.* ¶¶ 225–395 (seeking to introduce factual allegations related to non-Minnesota-based drivers); *id.* at 61–73 (seeking to introduce new causes of action arising under the laws of Georgia, Texas, Florida, South Carolina, North Carolina, New Mexico, and Virginia).

Separately, the Muy Defendants have now settled the cases against them, both in this Court and in Georgia. Accordingly, the parties have made clear that the motion to amend now only affects the Ayvaz Defendants. *See* ECF 291 at 1 (Plaintiff acknowledging that Settlement of nationwide claims against the Muy Defendants in Georgia rendered the motion to amend "moot as against the Muy Defendants").

In support of the pending motion, Plaintiff broadly argues that none of the typical reasons to deny amendment apply and that he should be free to plead new facts that would support the formation of a nationwide collective action in this case. *See generally* ECF 250 (Pl.'s Mem. in Supp. of Mot. to Amend.). Defendants oppose the pending motion. *See* ECF 259 (Ayvaz Def's.' Opp. to Mot. to Amend); ECF 260 (Muy Def's.' Opp. to Mot. to Amend.). The Court held a hearing on July 10, 2024, *see* ECF 284, and later, a status conference with Plaintiff and the Ayvaz Defendants on September 11, 2024, in which the Court heard the parties' positions as to the effect of intervening developments in another matter on the pending motion, *see* ECF 300.

4

## II.     Legal Standard

When an amendment is not sought "as a matter of course," as defined by the Federal Rules, "[a] party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).[2] The Rule provides that "[t]he court should freely give leave when justice so requires." *Id*. This rule therefore creates a "liberal policy favoring amendments," *Kozlov v. Associated Wholesale Grocers, Inc.*, 818 F.3d 380, 395 (8th Cir. 2016) (quotation omitted), but "[t]here is no absolute right to amend" and Rule 15 is not unbounded, *Becker v. Univ. of Neb. at Omaha*, 191 F.3d 904, 908 (8th Cir. 1999). "A district court appropriately denies the movant leave to amend if 'there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party,

---

[2] Plaintiff seeks to amend its complaint well after the deadline for doing so in the operative scheduling order. *See* ECF 97 (setting an amended pleadings deadline of May 15, 2023). As such, this request to amend would typically be subject to Rule 16, which among other things, requires the issuance of scheduling orders and allows for modification of such orders "only for good cause and with the judge's consent." This good-cause standard is stricter than that of Rule 15. S*ee Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008) ("Rule 16(b)'s good-cause standard governs when a party seeks leave to amend a pleading outside of the time period established by a scheduling order, not the more liberal standard of Rule 15(a)."). Here, however, the Court acknowledges that the lengthy stay in this matter created some ambiguity about whether the existing scheduling order truly remains in effect. Indeed, it appears that the parties and the Magistrate Judge assigned to this matter have been contemplating the need to amend the scheduling order for some time (*see* ECF 248, ECF 258), though it is unclear whether the Magistrate Judge would ultimately set a new date for amendment of pleadings. Moreover, the Court notes that neither Defendant appears to oppose the motion to amend on grounds that the request is simply untimely. Thus, despite the apparent tardiness of the motion to amend, the Court will apply Rule 15 to Plaintiff's request. And because the Court denies the amendment under Rule 15's more liberal standard, it assumes without deciding that the request also fails under Rule 16.

5

or futility of the amendment.' *Hartis v. Chicago Title Ins. Co.*, 694 F.3d 935, 948 (8th Cir. 2012) (quoting *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir.2005)).

**III.    Discussion**

The Court denies Plaintiff's motion to amend for several reasons. These start with the Court's observation that the "amendment" sought is largely another effort at reconsideration of the Court's previous ruling on personal jurisdiction, via a new legal theory that has been available to Plaintiff since the outset of this case.[3] Through amendment, Plaintiff intends to again attempt to form a nationwide FLSA action against the Ayvaz Defendants. Plaintiff has already attempted to change the outcome of the Court's decision on jurisdiction via a motion to reconsider. Those efforts failed, and this motion to amend is merely another effort to change the jurisdictional landscape, via a new legal theory and a different procedural mechanism. In part because this motion for amendment functions indistinguishably in outcome from the earlier motion to reconsider, the Court concludes that the request for amendment is appropriately denied. *See, e.g.*, *SPV-LS, LLC v. Transamerica Life Ins. Co.*, 912 F.3d 1106, 1111 (8th Cir. 2019) ("A motion for reconsideration is not a vehicle to identify facts or legal arguments that could have been, but were not, raised at the time the relevant motion was pending.") (quoting *Julianello v.*

---

[3] This reason is removed from the typical Rule 15(a) analysis, which inquires into timeliness, motive, prejudice, and futility. The Court's other reasons comport with these traditional factors—the amendments sought came only after significant delay and would prejudice the Ayvaz Defendants if allowed.

*K-V Pharm. Co.*, 791 F.3d 915, 923 (8th Cir. 2015); *Smartmatic USA Corp. v. Lindell*, No. 22-CV-98 (JMB/JFD), 2024 WL 1618349, at *7 (D. Minn. Apr. 15, 2024) ("A movant cannot raise facts or legal arguments [in seeking reconsideration] that they could have raised while the motion whose reconsideration is sought was pending.") (citing *Julianello*, 791 F.3d at 923).

The Court's decision is also informed in large part by Plaintiff's failure to bring this request for amendment much sooner.[4] The Defendants' motions to dismiss were brought in August 2022. In opposing those motions, Plaintiff chose to argue that FLSA itself conferred the requisite personal jurisdiction to bring claims arising anywhere in the United States against the Defendants in Minnesota. *See* ECF 34 (Pl's Opp. to Mot. to Dismiss). The Court's ruling on Defendants' motions, delivered from the bench in November 2022, was simple: plaintiff's jurisdictional theory failed under binding Eighth Circuit precedent. *See Vallone v. CJS Solutions Group, LLC*, 9 F.4th 861, 866 (8th Cir. 2021) (holding that a court's "jurisdiction to entertain a [FLSA] claim with connections to Minnesota" did not "establish[] jurisdiction to hear another claim with no such connection").

Following this ruling, Plaintiff had several potential paths forward. One of those paths was to immediately seek to replead its case and articulate a different basis for nationwide jurisdiction against the Defendants. Whether this Court would have been more favorable to such a request in late 2022 is a moot point because Plaintiff instead chose to

---

[4] This Court's analysis of a belated amendment request under Rule 15(a) inquires into "undue delay, bad faith, or dilatory motive" by the party seeking amendment. *Hartis*, 694 F.3d at 948. Here, the Court discerns nothing in this record that indicates bad faith or dilatory motive, and its focus is squarely on undue delay.

7

spend well over a year in settlement discussions, filing a new nationwide FLSA lawsuit against the Muy Defendants in Georgia, and attempting to persuade this Court to reconsider its jurisdiction ruling on the erroneous contention that there had been a material change of law issued by the Supreme Court in *Mallory*. It is noteworthy that when the Plaintiff first invoked *Mallory* in support of reconsideration, he did nothing to demonstrate that *Mallory* actually applied, offering no citation to the Minnesota statutes or any other evidence that the defendants had consented to jurisdiction through registration here. While Plaintiff's approach to the jurisdiction issue in the Georgia lawsuit as well as his reliance on *Mallory* in seeking reconsideration with this Court certainly foreshadowed what was to come, it was only in April 2024[5] that Plaintiff finally made plain that he wanted to allege that, under Minnesota law, Defendants had consented to jurisdiction in Minnesota over a nationwide class. In other words, Plaintiff asks to go back to the drawing board and allege a new factual basis for nationwide jurisdiction premised on the theory of consent under Minnesota law. But "[w]hen considerable time has elapsed between the initiation of the action and the motion to amend, the moving party must provide a valid reason for the belatedness of the motion." *Haukaas v. Liberty Mut. Ins. Co.*, No. 4:20-CV-04061-KES, 2022 WL 1719412,

---

[5] The pending motion is Plaintiff's second motion seeking leave to file a third amended complaint. The first such motion (ECF 194) was filed in November 2023, and sought leave to add nationwide allegations against James Bodenstedt, who Plaintiff contended was unable to dismiss such claims in the same manner that the corporate defendants had. *See* ECF 195 (Mem. in Supp. of First Mot. to File Third Amend. Compl.) at 4–5. Plaintiff withdrew this first motion after reaching a settlement in principle with the Muy Defendants, including Mr. Bodenstedt. *See* ECF 217 at 1.

8

at *13 (D.S.D. May 27, 2022) (citing *Thompson-El v. Jones*, 876 F.2d 66, 68–69 (8th Cir. 1989)).

Here, the Court concludes that Plaintiff lacks such a valid reason. For example, Plaintiff does not suggest that it was only until some revelation in discovery that he was aware of facts that would underpin an argument that Defendants had consented to general jurisdiction in Minnesota. Nor does Plaintiff argue that the consent theory was legally unavailable from the outset of the case, particularly as the Supreme Court's decision in *Mallory* merely re-affirmed longstanding precedent on the constitutionality of jurisdiction-by-consent. *See Mallory*, 600 U.S. at 146 (discussing and affirming the holding in *Pennsylvania Fire Insurance Co. of Philadelphia v. Gold Issue Mining & Milling Co.*, 243 U.S. 93 (1917)). Rather, Plaintiff's failure to allege facts that were consistent with this theory until now appears to be the result of a lengthy unawareness that the theory existed. Indeed, Plaintiff's counsel was refreshingly honest on this point during the hearing on the pending motion. But this admirable candor does not mitigate Plaintiff's lengthy delay in settling on a new jurisdictional theory in the same way that new evidence or new legal development would. And here, the Court concludes that it must simply draw a line in the sand.

Finally, the Court considers prejudice, because "[d]elay alone is insufficient justification [to deny leave to amend]; prejudice to the nonmovant must also be shown." *Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th Cir. 1998). As a general matter, the Court would find that Defendants face at least some prejudice from the requested amendment simply because it resurrects dismissed claims and therefore intrudes upon an

expectation of finality in that dismissal. *See UMB Bank, N.A. v. Guerin*, 89 F.4th 1047, 1057 (8th Cir. 2024) (noting that when "[w]hen a party moves to amend a complaint after [a total] dismissal, a more restrictive standard [than that of Rule 15] reflecting interests of finality applies") (quoting *Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1010 (8th Cir. 2015)). But much more specifically, this Court's decision on nationwide jurisdiction has led each of the Parties to take tangible, significant litigation steps that are impossible to ignore in weighing the equities of Plaintiff's late-requested amendment.

As noted above, at some point following the Court's order on the motions to dismiss, counsel for Plaintiff brought an almost identical FLSA suit against the Muy Defendants in the Northern District of Georgia. The plaintiff in that matter successfully fended off a nationwide jurisdiction challenge using a similar consent theory to that presented in the pending motion, and a Complaint involving a nationwide class covering all drivers outside of Minnesota was moving forward. Having secured nationwide jurisdiction, the Georgia plaintiffs were able to reach a settlement with the Muy Defendants in that litigation, and Plaintiff no longer seeks amendment as to those defendants. *See* ECF 291 (Notice of Settlement in Principle in *Brown v. Muy Pizza-Tejas, LLC et al*).

That leaves the Ayvaz Defendants, whose Minnesota drivers remain in this case and against whom Plaintiff still seeks to amend its complaint to include general consent-to-jurisdiction allegations. However, the Court finds the balance of prejudice weighs against amendment here as well. After this Court's decision on the motions to dismiss, a different plaintiff, represented by a different law firm, brought a FLSA action against the Ayvaz

10

Defendants in the Southern District of Texas on behalf of a nationwide collective of Ayvaz delivery drivers. *See Israel Garza et al. v. Ayvaz Pizza, LLC*, 4:23-cv-1379 (S.D. Tx.). The nationwide allegations there are virtually identical to the ones Plaintiffs seeks to amend back into this case. The Ayvaz Defendants are headquartered in Texas, and therefore declined to challenge general personal jurisdiction in Texas. *See* ECF 283 (Ayvaz Def's.' Notice of Settlement in Separate Matter) at 2. The Texas matter then settled, resulting in an opt-in agreement for Ayvaz delivery drivers in states other than Minnesota, and apparently covering a damages period quite similar to that of this lawsuit. *See id.*; ECF 295 (Pl.'s Notice Regarding *Garza v. Ayvaz Pizza, LLC* Settlement); ECF 296 (Ayvaz Resp. to Pl.'s Notice). Indeed, at the hearing Plaintiff conceded that all non-Minnesota drivers who would be part of this case will be permitted to opt into that settlement.

Despite this settlement, Plaintiff argues that this Court may nevertheless allow for an amendment that could result in the formation of a second nationwide collective action against the Ayvaz Defendants by its delivery drivers. *See* ECF 295 at 1 ("The Garza settlement is an opt-in, FLSA collective action settlement where only those drivers who join the case even arguably release any claims. As a result, it does not moot the claims Plaintiffs are seeking to add in this matter."). This argument fails for two reasons. First, Plaintiff's position regarding the impact of the two settlements is remarkably inconsistent. Plaintiff's counsel states that the opt-in settlement in Georgia with the Muy Defendants, involving the same Plaintiff's counsel as here, renders the pending motion "moot as against the Muy Defendants." *See* ECF 291 at 1. But Plaintiff takes a different stance on the Texas settlement, which was negotiated by and will benefit another law firm. Second, Plaintiff's

11

arguments broadly miss the point. The question is not whether it is legally possible for an employer to face multiple FLSA actions, comprising overlapping pools of potential participants. The question is whether it would be prejudicial to allow this amendment in this case, as it currently exists. The Court concludes that it undoubtedly would. According to the Ayvaz Defendants, the Texas settlement agreement was negotiated without the inclusion of Minnesota drivers based on the express acknowledgment that they remained in this litigation. *See* ECF 283 at 2. It stretches credulity to believe that the Ayvaz Defendants did not set its strategy in Texas based on the understanding that this Court had definitively concluded that it lacked jurisdiction over the claims of drivers elsewhere. And, with the Ayvaz Defendants having now committed to those strategic choices by reaching a settlement in Texas, it would be highly prejudicial to resurrect a set of nationwide claims against them in this case. Finally, the Court notes that any harm to the members of a putative nationwide collective caused by not allowing amendment in this case is ameliorated by those members' ability to opt into the Texas case. The balance of harms therefore strongly favors denying amendment.

### IV. ORDER

For the foregoing reasons, **IT IS HEREBY ORDERED that** Plaintiff's Second Motion to File a Third Amended Complaint (ECF 249) is **DENIED**.

Date: October 24, 2024

*s/ Katherine M. Menendez*
Katherine M. Menendez
United States District Judge